## DAVIS v. SELBY OIL & GAS CO.

No. 1870. Opinion Filed November 16, 1912.

Rehearing Denied January 7, 1913.

INDIANS—Lease by Allottee—Conditional Approval—New Proposal—Failure of Contract—Cancellation. An oil and gas lease executed by an Indian landlord to a corporation tenant, subject to the approval of the Secretary of the Interior, was approved, conditioned upon the lessee and its sureties executing certain documents containing conditions and terms which the lessee rejected. **Held,** that such conditional approval was a new proposal, which, when not accepted by the lessee, resulted in a failure of contract, and delay of action on the part of the lessee did not result in creating one.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*A. T. West, Assigned Judge.*

Action by Joseph Davis against the Selby Oil & Gas Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*McDougal, Lattimore & Lytle,* for plaintiff in error.

*George L. Mann, George S. Ramsey, L. B. Jackson,* and *C. L. Thomas,* for defendant in error.

DUNN, J.    This case presents error from the district court of Creek county, and was an action instituted on October 3, 1908, by plaintiff in error, as plaintiff, against the defendant to recover the sum of $3,975, with interest, alleged to be due plaintiff as bonus agreed to be paid for a certain oil and gas lease. From the record it appears that on August 14, 1907, an oil and gas lease was executed by plaintiff Davis to the Selby Oil & Gas Company and Joseph Bruner, covering the allotment of plaintiff, a citizen of the Creek Nation.    The agreed bonus was $4,000, $25 of which was paid in cash, and the balance, being the amount sued for in this case, was deposited in the form of a check in the First National Bank of Sapulpa, to be paid "when the lease taken this date is approved by the Honorable Secretary of the Interior."    The lease was duly filed with the Department of the Interior, and was forwarded by the Indian agent at Muskogee to the Commissioner of Indian Affairs, with recommendation that it be approved.    On October 19, 1907, Acting Commissioner C. F. Larabee submitted the said lease to the Secretary of the Interior; on October 21, 1907, the same was approved, "subject to regulations of June 11, 1907, as amended October 14, 1907,", which regulation provided that any lease thereafter delivered to the lessee in which the royalty specified therein is less than the minimum rate of royalty in force at that time, shall be subject to such minimum rate instead of the rate originally specified in the lease.    On September 26, 1907, the Acting Secretary of the Interior wrote a letter to the Commissioner of Indian Affairs directing him that "said section (section 16 of the Regulations of June 11, 1907.) shall be regarded as a part of all

oil and gas leases which have been heretofore, or shall be here-after, approved by the Department of the Interior, executed in accordance with the regulations in force prior to June 11, 1907, upon the terms, and for the considerations therein prescribed, and shall be construed to supersede all terms in such leases which are inconsistent with it, but not to prevent further modification of the regulations." And that "the approval hereafter of leases executed as described in the foregoing paragraph shall be made subject to the conditions and provisions of this letter. No lease, after having been approved conditionally or in a modified form, shall be delivered or be in force until there shall be filed with the Indian agent the written consent of the lessee and his surety, or sureties, to the effect that their liability, respectively, under the lease and bond, shall be determined in accordance with the terms of the lease as approved." On November 7, 1907, the Indian agent at Muskogee wrote to the agent for the Selby Oil & Gas Company and Joseph Bruner, giving notice of the action of the department in approving the lease, enclosing blank forms of acceptance of the approval, subject to the amended regula-tions. Thereafter, and on January 23, 1908, in answer to a letter, F. M. Selby wrote to the United States Indian Agent, stating that "we did not execute the acceptance, accepting as final your statement that failure would result in the disapproval or con-cellation of this lease;" also, that the same was then subject to cancellation, and urged that the same be canceled. Thereafter, the Selby Oil & Gas Company filed with the department a "With-drawal of Lease by Lessee," purporting to withdraw the lease, assigning as reasons therefor, first, that there was a question as to the lessor's age; second, referring to the department's letter of November 7, 1907, and to lessee's letter of January 23, 1908, and insisting that the lease was not now subject to approval by the department. On February 10, 1908, the lessor, Joseph Davis, filed with the department a protest against the disapproval or cancellation of the said lease, and requested that the same be fully approved. A copy thereof was forwarded to the Selby Oil & Gas Company, to which Mr. Selby replied, raising the question of the age of the lessor; and requesting a thorough investigation

thereof, "as we will insist upon a clear title before paying the balance of bonus money." On April 7, 1908, a hearing was had before a representative of the Indian agent, testimony was taken, and upon the lease being offered in evidence, in the trial of this case in the court below, it was found to contain the following indorsement: "Department of the Interior, Washington, D. C., May 20, 1908. 'Canceled.' Jesse E. Wilson, Assistant Secretary." On July 20, 1908, the United States Indian Agent wrote to the Selby Oil & Gas Company advising them that on May 20, 1908, the department canceled the said lease.

The plaintiff sets up in his petition the lease and contract with defendant, the agreement as to bonus, the approval of the lease by the Secretary of the Interior, and the refusal by the defendant to pay the agreed bonus. Defendant answered, denying the lease was ever approved by the Secretary of the Interior, alleging also that the lessor was not of age at the time of the execution thereof, and the same was of no binding force upon the defendant. Upon the issues thus joined, the cause came on for trial on October 7, 1907, and was tried to the court without a jury, and judgment was rendered for defendant. Motion for new trial was duly filed and overruled, and plaintiff has lodged his appeal in this court upon petition in error and case-made.

The lease provided for a royalty of ten per cent., and as we have seen, was executed on August 14, 1907. At that time there were in force the rules of June 11, 1907. Thereafter, and before the lease was acted upon, the Secretary promulgated his rules of October 14, 1907, in which was embodied a provision that the Secretary might from time to time increase the minimum rate of royalty to a minimum rate not exceeding 16⅔ per cent., and under the letter of September 26, 1907, the Acting Secretary of the Interior wrote a letter to the Commissioner of Indian Affairs providing that no lease, after having been approved conditionally or in a modified form, *shall be delivered or be in force* until the written consent of the lessee and his surety or sureties shall be filed with the Indian agent, fixing their liability under the lease and bond in accordance with the terms of the lease as approved. After this conditional approval of the lease,

the forms for the acceptance of the defendant and its sureties were forwarded, but they declined to execute them, and thereafter, as stated above, the lease was canceled. The course taken by the department on behalf of the plaintiff was tantamount to a conditional acceptance or a counter proposition on the part of plaintiff and the officials acting for him, and all the authorities agree that this does not constitute an agreement unless the proposal is complied with. See 1 Page on Contracts, sec. 47; Clark on Contracts, sec. 19, and authorities cited. Moreover, our statute, section 1065, Comp. Laws 1909, provides:

"An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character, which the proposer can separate from the rest, and which will include the person accepting. A qualified acceptance is a new proposal."

Under the facts in this case the approval of the lease was nothing more than a qualified acceptance, amounting in effect to a new proposal, which the defendant in this case declined. Hence, the assumed contract, which was the basis of this action, was never consummated, and the liability of the defendant thereunder never became fixed. Nor, in our judgment, will the fact that there was delay on the part of either the defendant or the department create a contract where otherwise there would be none.

The syllabus to the case of *Beers v. Mackin,* 145 U. S. 629, 36 L. Ed. 842, reads as follows:

"A writing given by the local agent of a railway company, stating that he has received of a person one-fifth payment on a tract of the company's land therein described, subject to the approval of the land commissioner of the company and sold on five years' time, is only a proposition which does not create a contract of sale binding on the company, by the failure of the commissioner to reject the proposition within a reasonable time."

The facts out of which that case grew were briefly as follows: The plaintiff in error undertook to purchase certain lands from a railway company; its agent receipted for the money as part payment made, which receipt contained the following phrase: "Subject to the approval of the land commissioners at the office of the company at Omaha, Nebraska." This receipt and payment were made March 21, 1883; notification to the defend-

ant that the contract was not approved by the railway company was not given until June 30, 1883, and the question in that case was whether this delay on the part of the railway company created a valid contract between it and the defendant. Discussing the question, the Circuit Court, by Brewer, C. J., said:

"The face of the paper itself shows that it was subject to the approval of the land commissioner; so that even if the agent had represented that he had full authority the defendant was notified by the terms of the paper given to him that he had not, and that the whole matter was to be referred to and subject to the approval of the land commissioner. In other words, it stands simply as a proposition; no more and no less. It binds the company no more than if defendant had written to it offering to buy the land and enclosing a certain sum as part payment, and the railway company, through its proper officer, had acknowledged the receipt of the money and notified him that his proposition would be considered and subsequently acted upon. Under such circumstances would the failure to act upon the proposition within a reasonable time create a contract? A contract is said to imply the consent of two minds. There never has been an assent on the part of the railway company, and, whatever comment may be made or criticism placed upon the delay of the railway company, can it be said that it is bound by a contract to which it has never assented? When a proposition of purchase of real estate is sent by mail, must the owner decline the proposition immediately under penalty of being adjudged to have accepted it? On the contrary, is not the rule universal that the proposition must be in terms accepted before a valid contract is made?"

The question answered itself, and the conclusion was afterwards affirmed by the Supreme Court of the United States.

Holding as we do, therefore, that the approval of the lease with the conditions attached was simply a qualified acceptance and tantamount to a new proposal, which was never accepted by the defendant, the judgment of the trial court must be affirmed.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., absent, and not participating.